[Crim. No. 3391. First Dist., Div. One. Oct. 22, 1958.]

THE PEOPLE, Respondent, v. DANIEL WESLEY JOHNSON, Appellant.

Marvin Stender, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

ST. CLAIR, J. pro tem.*—Defendant was charged in an information with three violations of Penal Code, section 476a, drawing and uttering checks in the amount of $20, $20, and $12.50, knowing that he had insufficient funds for the payment of the checks upon their presentation. After first pleading not guilty to all three counts, defendant withdrew this plea and pleaded guilty to the three counts. Defendant appeals from the judgment entered on the guilty pleas.

Counsel has been appointed for this appeal whose sole contention is that the face of the record shows that defendant was represented by incompetent counsel in the trial court. Defendant has also filed two briefs in this matter, urging this ground and others. The attorney general has filed two briefs, one responsive to the defendant's opening brief, and one responsive to counsel's opening brief.

I.

Was defendant denied effective aid of counsel because of incompetence of his chosen counsel?

Defendant was first arraigned on the information involved in this appeal on November 2, 1956. Mr. Nunes, of the public defender's office, appeared with him. Defendant pleaded not guilty to all three counts, and the trial was continued to November 13. At that time another continuance was granted at the request of Mr. Nunes to permit defendant to employ private counsel.

The next hearing was held on November 23. An attorney named Robert P. Brorby of the firm of Dodge and Evans appeared, and stated that "arrangements have practically been completed for this firm to represent Mr. Johnson." The matter was continued to November 30. On that date defend-

---

*Assigned by Chairman of Judicial Council.

ant was represented by Mr. Nunes, who stated that he had been informed that Mr. Dodge would take the case. The clerk said that he had received a telephone call that "the man's coming in from out of town and that he'll be here by eleven o'clock." The matter was continued.

On December 3, 1956, the case was set for trial. Defendant was present at this hearing but his counsel, a Mr. White, did not make a personal appearance. During this hearing, White telephoned the clerk, who repeated his statements to the judge. White was substituted in as defendant's attorney.

On December 19, the date set for trial, White arrived before court convened. He advised the clerk that he had another trial scheduled for that day and they agreed on a date for continuance. White also advised the clerk that defendant would waive time. Defendant, when questioned by the court, stated that his attorney's statement was correct, i.e., he would and did waive time of trial.

On January 21, 1957, White appeared and stated that he had had a conference with his client the previous day and that the defendant intended to change his plea.

The defendant did not appear on February 4 and a bench warrant issued. When the defendant surrendered on March 7, White was not present but the defendant stated that he had consulted with him by phone the previous Monday.

On March 11, in the presence of the defendant, White represented that the defendant had consulted with him, and that he had advised him before defendant's rearrest on the bench warrant. White stated that the defendant had "indicated now he's perfectly willing to change his plea" and asked permission to withdraw the previous plea. The defendant thereupon pleaded guilty to the first count of the information, which was described as "a felony." Then the following colloquy took place. This is the passage relied upon to show incompetence as a matter of law:

"THE CLERK: Daniel Wesley Johnson, to the crime of a felony, to-wit, a ——

"MR. WHITE: Before we proceed any further, Mr. Merrill is at a disadvantage, but the commitment is such, as to one count, the usual ——

"MR. MERRILL: Well, the problem is I think, on the amount here, Clint. If I'm not mistaken, that is the problem, with the amount, to keep the jurisdiction in this Court, because they're all—they're all small checks.

"MR. WHITE: What is the problem, then?

"MR MERRILL: Well, to keep it within the jurisdiction of this Court there would have to be a plea to the three, because they total—they just total over fifty, I think, or a hundred, whatever the code section reads, since the code section's been amended this last year. Actually they are such small checks I don't think it would make much difference.

"MR. WHITE: That is true, but in each instance they are a felony.

"MR. MERRILL: No, that is not true, not unless ——

"MR. WHITE: Well, educate me, because I only assumed that he would plead to one, as so often is the case.

"THE COURT: Well, I don't assume there would be any consecutive sentence involved.

"MR. WHITE: All right.

"MR. MERRILL: Here is the point, under the code, the way it is, a plea to one would be a misdemeanor and take it out of the jurisdiction of the Court." The defendant thereupon pleaded guilty to the other two counts of the information.

Penal Code, section 476a, provides that any person who "willfully, with intent to defraud, makes or draws or utters or delivers any check . . . upon any bank . . . for the payment of money, knowing at the time of such making, drawing, uttering or delivering that the maker . . . has not sufficient funds in, or credit with said bank or depository . . . for the payment of such check . . . in full upon its presentation, although no express representation is made with reference thereto, is punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than 14 years." The second paragraph contains a proviso that "if the total amount of all such checks . . . that the defendant is charged with and convicted of making, drawing, or uttering does not exceed fifty dollars ($50), the offense is punishable only by imprisonment in the county jail for not more than one year," except when the defendant has certain previous convictions not applicable here. Thus Mr. White was correct in stating that each violation of 476a may be a felony, regardless of the amount of the individual check, but the District Attorney was correct in stating that the offense is not punishable as a felony unless the aggregate of the bad checks involved in the offenses for which defendant is convicted is more than $50.

 Counsel on appeal argues that the above quoted colloquy demonstrates that "counsel had not read and was not familiar with the contents of the statute which his client was accused of violating," that "he was unfamiliar with the

mechanics of that fundamental distinction in the criminal law between misdemeanor and felony," and therefore that White was incompetent. The first inference might be drawn, although it is not the only possible inference in the context of the discussion, but there is no evidence of the second contention.

White suggested that the defendant plead only to one count. Mr. Merrill objected because of the "problem, with the amount." White's question, "What is the problem then?" could indicate an unfamiliarity with section 476a, but it could also be a rhetorical question asking for a clarification of the prior statement from Mr. Merrill, which was somewhat disjointed. After Mr. Merrill's reference to the $50 qualification of the code section, White said, "That is true, but in each instance they are a felony." This statement was correct, but Mr. Merrill disagreed with it. White's answer, "Well, educate me, because I only assumed that he would plead to one, as so often is the case," could be interpreted as an admission of ignorance, but in context, it also could be interpreted as an explanation of White's disagreement with Merrill's prior statement, and as an expression of concern over protection of his client against consecutive sentences. The trial court adopted this latter interpretation, as evidenced by the court's response that "I don't assume there would be any consecutive sentence involved."

As support for the contention that White was unfamiliar with the felony-misdemeanor distinction counsel cites White's construction of the statute. ("That is true, but in each instance they are a felony.") White's interpretation is correct as the statute expressly says the uttering of *any* "bad" check is punishable by "imprisonment in the county jail for not more than one year, or in the state prison for not more than 14 years."

Penal Code, section 16, reads:

"CRIMES, HOW DEFINED. Crimes are divided into:

"1. Felonies; and,

"2. Misdemeanors."

The first three sentences of Penal Code, section 17, read:

"A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime is a misdemeanor. When a crime, punishable by imprisonment in the state prison, is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment other than

imprisonment in the state prison, unless the court commits the defendant to the California Youth Authority.''

█ Where an offense is punishable either as a felony by imprisonment in the state prison or as a misdemeanor by fine or by imprisonment in a jail the offense is a felony up to the time the *sentence* is imposed. See Fricke, *California Criminal Law* (5th ed.), pages 5-6.

Subsection (b), Penal Code section 476a is a peculiar statute; it reads:

''However, if the total amount of all such checks, drafts, or orders that the defendant is charged with and convicted of making, knowing, or uttering does not exceed fifty dollars ($50), the offense is punishable only by imprisonment in the county jail for not more than one year, except that this subdivision shall not be applicable if the defendant has previously been convicted of a violation of Sections 470, 475, or 476 of this code, or of this section of this code, or of the crime of petty theft in a case in which defendant's offense was a violation also of Sections 470, 475, or 476 of this code or of this section. . . .''

█ At the oral argument, counsel for defendant conceded, as indeed he must, that the defendant was *charged* with three felonies. If he was convicted (or pleaded guilty) to one or two of the charges, he would be pleading guilty to felonies but, at the time of *sentence,* the court bound by subsection (b) of section 476a could do nothing but convert it into a misdemeanor.

At the time of the colloquy in question, the defendant had pleaded guilty to count one, i.e., to a felony. The assistant district attorney was in error when he said that it was not true that each count was a felony. It was to his incorrect statement of the law that Mr. White made the statement that defendant seizes upon, ''Well, educate me, . . .'' It would appear that Mr. White was more familiar with the statute in question than the assistant district attorney.

All that happened was that the district attorney refused to accept a plea that would tie the court's hand; he would only accept a plea that would permit the court to decide at the time of sentence whether it would be a felony or misdemeanor.

Counsel also makes much of the fact that ''at no time during this proceeding did counsel confer with his client to inform him of the import of a felony plea; . . . nor is there any indication that appellant understood this.'' There is nothing in

the record to indicate that the defendant and his counsel did not confer fully on the case before the proceeding, or that defendant did *not* understand what he was doing. On the contrary, the record indicates that White and the defendant conferred several times and that defendant intended to plead guilty to a felony, but did not want consecutive sentences imposed. This is exactly what happened. Even if appeal counsel's contention is accepted that White was ignorant of the terms of the statute, only by assuming further that White was incapable of understanding what the district attorney had told him, and had inadequately consulted with the defendant upon his possible defenses to all three counts, can the conclusion urged by appeal counsel be reached.

██ Defendant, speaking for himself in his brief and not through his attorney, has an additional complaint: that he "was told by his attorney to admit to the court and to him of such violation of the charges by the D.A. Office at Berkeley and that if I did he would promise probation or a fine for any such action." Even if this were the case, which is not supported by the record, bad judgment by counsel concerning the possible sentence is not a ground for reversal of the judgment. ██ " [W]here an accused is represented by counsel and the basis of his claim is that he received poor advice, indicative of poor judgment on the part of his attorney, and acted thereon to his detriment, those facts, even if substantiated, do not amount to a denial of the right of representation. (*People* v. *Miller,* 114 Cal. 10 [45 P. 986] ; *People* v. *Lennox,* 67 Cal. 113 [7 P. 260] ; *People* v. *Kirk,* 98 Cal.App.2d 687 [220 P.2d 976] ; *People* v. *Gilbert,* 25 Cal.2d 422 [154 P.2d 657] ; *People* v. *Ynostroza,* 105 Cal.App.2d 332 [232 P.2d 913] ; *People* v. *Morton,* 100 Cal.App.2d 269 [223 P.2d 259].) " (*People* v. *Logan,* 137 Cal.App.2d 331, 335 [290 P.2d 11].)

In *People* v. *Miller,* 114 Cal. 10 [45 P. 986], the court affirmed an order denying leave to change a plea from guilty to not guilty where the affidavit in support of the motion stated that defendant pleaded guilty " 'without due deliberation and without fully realizing his position, and in the hope that by so doing the punishment to which he would be exposed, were he tried before a jury, would thereby be mitigated.' " (P. 14.) The court said at page 16 that a hope or belief of a lesser punishment, or being led by counsel to such a belief, would be an insufficient reason to require withdrawal of a plea. *People* v. *Lennox,* 67 Cal. 113 [7 P. 260], was a similar case where the defendant was induced to plead guilty by

advice of his father and his attorney that he would receive a lesser punishment.

■ *People* v. *Gilbert,* 25 Cal.2d 422, 443 [154 P.2d 657], approved of such cases as *People* v. *Miller, supra,* but added an exception: "The most critical point is substantial deprivation of the exercise of the free will and judgment of the party through an act participated in by the state. Mere advice and persuasion or the expression of matters of opinion by his own attorney will not suffice to vitiate the plea. Neither will unwarranted or even wilfully false statements of factual matters by his attorney suffice. The private attorney is selected by the party and is his agent. But if the representation of the private attorney presents a purported commitment by a responsible state officer which if actually made would vitiate the plea and if the acts or statements of such state officer, although innocently done or made, apparently corroborate the representation, are in good faith and without negligence relied upon by the defendant, and in truth operate to prevent the exercise of his free will and judgment, then the state in its solicitude for fairness will not accept the benefit of a plea so given." See also *People* v. *Odlum,* 91 Cal.App.2d 761 [205 P.2d 1106], following *People* v. *Gilbert, supra,* 25 Cal.2d 422; *People* v. *Kirk,* 98 Cal.App.2d 687, 693 [220 P.2d 976], holding the defendant did not bring himself within the Gilbert exception in a *coram nobis* proceeding; *People* v. *Ynostroza,* 105 Cal.App.2d 332, 333 [232 P.2d 913], same, where the alleged inducements were by the attorney and uncorroborated by any acts of state officials; *People* v. *Morton,* 100 Cal.App. 2d 269, 270 [223 P.2d 259] (same); *People* v. *Croft,* 134 Cal. App.2d 800, 803 [286 P.2d 479] (same); *People* v. *Loeber,* 158 Cal.App.2d 730, 734 [323 P.2d 136], "deal" not proved, appeal from judgment of conviction. There is no contention that this case comes within the Gilbert exception, inasmuch as the deputy district attorney made it clear in open court that he would only accept a felony plea.

## II.

Defendant, in his own briefs, alleges the occurrence of numerous errors. His contentions, none of which are meritorious, will be summarized below.

A. Dismissal of the Information.

■ Defendant states that counts one and three of the information should have been dismissed because of certain testimony at the preliminary examination. His contention

would appear to be that he was committed without reasonable or probable cause on these counts, a contention that has been waived by a failure to move to set aside the information on these grounds. (Pen. Code, §§ 996, 995.)

B. Double Jeopardy.

 Defendant feels that he has been twice in jeopardy because he had been charged with counts one and three, but not committed on those offenses because of a defect of proof at the preliminary examination. Dismissal of an information is not a bar to a subsequent prosecution for the same offense. (Pen. Code, § 999.)

C. Denial of Due Process.

The first part of this argument is somewhat obscure. Defendant cites *People* v. *Lenore,* 139 Cal.App. 40 [33 P.2d 892], wherein it was held that a portion of Penal Code, section 476a, concerning presumptions attaching to notice of protest, and which has since been deleted, was constitutional.

 Defendant also cites *People* v. *Spinato,* 100 Cal.App. 600 [280 P. 691], holding that defendant must personally waive trial by jury and cannot do so through counsel alone. This requirement is not applicable to a plea of guilty. (*In re Jingles,* 27 Cal.2d 496, 499 [165 P.2d 12] ; *Dale* v. *City Court of Merced,* 105 Cal.App.2d 602, 607 [234 P.2d 110] ; *People* v. *Keeton,* 130 Cal.App.2d 334, 335 [278 P.2d 961].)

D. Confrontation of Witnesses.

 Defendant is apparently arguing that he was denied the right to confront witnesses against him, because no witnesses appeared in the superior court. (See Pen. Code, § 686.) Inasmuch as there were no issues to be tried after the plea of guilty, there was no necessity for confrontation of witnesses.

Defendant also sets forth some quotations from McKinney's Digest, Criminal Law, section 1340, concerning harmless and reversible error. There being no error, these sections are inapplicable.

E. Miscellaneous Contentions.

The attorney general also gleans from the defendant's briefs the following complaints:

1. Denial of a speedy trial. The record shows a waiver of this right.

2. Denial of a second preliminary hearing. An illegal commitment is waived by failure to move to set aside the information. (Pen. Code, §§ 996, 995.)

3. Improper denial of probation. When the defendant is eligible, the granting of probation is a matter of discretion with the trial court. (Pen. Code, § 1203.)

The record does not establish that White was incompetent or failed to adequately represent defendant. Even if it did, to say that this is sufficient to require reversal would be a significant extension of prior California cases. The other errors urged by defendant have no merit.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.